UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

JERMAINE DUNBAR,

               Plaintiff,           **MEMORANDUM & ORDER**
                                        22-CV-222 (EK)
        -against-

ANTHONY J. ANNUCCI,[1]

               Defendant.

--------------------------------------x
ERIC KOMITEE, United States District Judge:

       Petitioner Jermaine Dunbar seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  A New York jury convicted Dunbar of attempted robbery and criminal mischief.  He received a sentence of seventeen years to life and is currently incarcerated at Coxsackie Correctional Facility.[2]

       Dunbar makes just one argument in his petition: he asserts that the vehicle stop that led to his arrest violated the Fourth Amendment, and that evidence seized from the vehicle

---

[1] Anthony Annucci is the former acting commissioner of the New York Department of Corrections and Community Supervision.  But "[t]he proper respondent in a *habeas corpus* petition under [Section] 2254 is the superintendent of the facility where [the petitioner] is incarcerated." *Mancia v. New York*, No. 20-CV-719, 2020 WL 1140780, at *2 n.3 (S.D.N.Y. Mar. 6, 2020) (citing Rule 2(a) of the Rules Governing Section 2254 Cases). Accordingly, the Clerk of Court is respectfully directed to substitute Brooke Blaise, the superintendent of Coxsackie Correctional Facility, as the defendant in this action, and update the caption accordingly.

[2] Dunbar has moved facilities on several occasions since filing this petition.  The Court bases his current location on the Department of Corrections' Incarcerated Lookup.  *See* https://nysdoccslookup.doccs.ny.gov/.

was therefore inadmissible at trial.  Because this claim is not cognizable on habeas review, Dunbar's petition is denied.

## I.   Background

## A.   State Court Proceedings

Dunbar was arrested in connection with an attempted armed robbery of a Queens check-cashing business in April 2009. Am. Pet. 1, ECF No. 19.  The arrest occurred after New York City Police Department officers — responding to a fellow officer's radio report about an ongoing robbery — stopped and searched a black livery cab in which Dunbar was riding.  *Id.* at 1-2.

### 1.   The First Suppression Hearing

On December 18, 2009, Justice Robert C. McGann held a pre-trial suppression hearing to determine whether the stop-and-search comported with the Fourth Amendment.  At the hearing, Officer Francis Diliberto testified that he had received a radio call describing an ongoing robbery.  First Suppression Hr'g Tr. 5:9-22, ECF No. 12-6 beginning at SR 240.  The suspect was a Black man "with a blue and white striped shirt, and a black handgun" who was riding in a "black livery with New Jersey license plates" four blocks from Officer Diliberto's location. *Id.* at 6:2-25.  Officer Diliberto and his partner located a car matching that description, pulled it over, and handcuffed Dunbar and the driver.  *Id.* at 7:1-8:25.  Diliberto then observed a black baseball cap, blue and white shirt, and black handgun on

the car floor.  *Id.* at 9:18-10:2.  The officers then escorted Dunbar to the police precinct.  *Id.* at 29:15-19.

Based on this testimony, Justice McGann found that Diliberto had reasonable suspicion to initiate the vehicle stop. Suppression Order 4, ECF No. 12-6 beginning at SR 357.  He further concluded that Officer Diliberto had lawfully seized the evidence on the car floor pursuant the plain-view exception to the warrant requirement.  *Id.* at 4-5.

The jury ultimately found Dunbar guilty of second-degree attempted robbery and fourth-degree criminal mischief, and he received a sentence of seventeen years to life.  On appeal, the Second Department rejected Dunbar's challenge to the suppression finding, but granted him a new trial after concluding that he had not been clearly informed of his *Miranda* rights after his initial arrest.  *People v. Dunbar*, 104 A.D.3d 198, 216-17 (N.Y. 2d Dep't 2013).[3]  Dunbar was eventually convicted again and received the same sentence.  *See* July 28, 2016 Trial Tr. 1373-1374, ECF No. 12-5 beginning at page 134 of 296; September 22, 2026 Sentencing Tr. 10, ECF No. 12-5 beginning at page 278 of 296.

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2.    The Second Suppression Hearing

Dunbar appealed his second conviction to the Second Department. After rejecting most of Dunbar's arguments, the appellate court directed the trial court to conduct an additional evidentiary hearing regarding the source of the robbery report that was transmitted to Officer Diliberto. *People v. Dunbar*, 178 A.D.3d 948, 950-51 (N.Y. 2d Dep't 2019).

That hearing took place before Justice Joseph Zayas in March 2020. Captain Aaron Edwards testified that while he was on patrol on the afternoon of April 23, his radio dispatcher directed him to a business at 40-20 108th Street. Second Suppression Hr'g Tr. 19:8-20:11, ECF No. 12-8 beginning at SR 883. When he arrived, a Hispanic man approached him and said the robbers were driving a "livery taxi with a Jersey license plate[]." *Id.* at 20:17-24, 22:9-22. The man also said the livery fled "southbound." *Id.* Captain Edwards testified that he then relayed this information to central dispatch. *Id.*

Based on this testimony and the evidence presented at the prior suppression hearing, Justice Zayas concluded that the radio transmission constituted reasonable suspicion to stop the car to "investigate whether [Dunbar] was, in fact, the perpetrator" of the robbery. Second Suppression Order 3 n.2, 16-17, ECF No. 12-8 beginning at SR 977. He also concluded, like Justice McGann, that Officer Diliberto had properly seized

4

evidence from the car under the plain-view exception.  *Id.* at 17.  The Second Department affirmed.  *People v. Dunbar*, 188 A.D.3d 1247, 1248 (N.Y. 2d Dep't 2020).  The Court of Appeals denied leave to appeal on February 26, 2021.  *People v. Dunbar*, 165 N.E.3d 685 (N.Y. 2021).

**B.   Proceedings Before This Court**

Dunbar filed his original Section 2254 petition on January 13, 2022.  The petition was timely, because it came within one year of the Court of Appeals' decision to deny leave to appeal.  28 U.S.C. § 2244(d)(1)(A).

One year later, Dunbar moved to amend his petition. ECF No. 15.  Specifically, he sought to supplement the petition with a map that the government had produced to his counsel during his first trial.  *Id.* at 1.  According to Dunbar, that map showed that the livery had actually been traveling "northbound," and therefore contradicted Captain Edwards' testimony that the car had fled "southbound."  *Id.* at 1-2; *see also* Am. Petition 2, 13, ECF No. 19.  The Court granted Dunbar's request, *see* Docket Order dated January 27, 2023, and he filed the amended petition on March 7, 2023.

That petition, which incorporates the arguments from the original petition, is now before the Court.

## II.  Legal Standard

28 U.S.C. § 2254, as amended by AEDPA, governs an application for a writ of habeas corpus from a person in custody pursuant to the judgment of a state court.  Under AEDPA, a petitioner challenging a determination that was "adjudicated on the merits" in state court must demonstrate that the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(2).  The state court's findings of fact are "presumed to be correct," and the petitioner can rebut this presumption only "by clear and convincing evidence."  *Id.* § 2254(e)(1).

A legal conclusion is "contrary to" clearly established federal law if it "contradicts the governing law set forth in" the Supreme Court's cases or "confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, yet "arrives at a result different from [that] precedent."  *Price v. Vincent*, 538 U.S. 634, 640 (2003).  And a decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle" in the Supreme Court's decisions but "unreasonably

6

applies that principle to the facts of the prisoner's case."
*Williams v. Taylor*, 529 U.S. 362, 413 (2000). It is the
petitioner's burden to show that the state court applied the
governing principle in an objectively unreasonable manner.
*Price*, 538 U.S. at 641.

It is not enough that the federal court conclude, in
its independent judgment, that the state court's decision was
incorrect or erroneous:  "[A] petitioner must show that the
state court's ruling on the claim being presented in federal
court was so lacking in justification that there was an error
well understood and comprehended in existing law beyond any
possibility for fairminded disagreement."  *Carmichael v.
Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (citing *Harrington v.
Richter*, 562 U.S. 86, 103 (2011)).

### III. Discussion

In his petition, Dunbar argues that the arresting
officers lacked reasonable suspicion for the vehicle stop, and
that evidence derived from that step therefore should have been
excluded at trial.  Am. Pet. 6-7. Dunbar's claim is not
cognizable on habeas review.

Fourth Amendment claims may not be raised on habeas
review if the state has provided the petitioner with "an
opportunity for full and fair litigation" of the claims.  *Stone
v. Powell*, 428 U.S. 465, 482 (1976); *see also Cardwell v.*

7

*Taylor*, 461 U.S. 571, 572-73 (1983).  The Second Circuit has held that, as a general matter, "New York state courts provide facially adequate procedures to redress Fourth Amendment violations."  *Ethridge v. Bell*, 49 F.4th 674, 686 (2d Cir. 2022).[4]  Thus, to show that he was denied an adequate opportunity to litigate these claims, Dunbar must establish an "unconscionable breakdown" in the process.  *Capellan*, 975 F.2d at 70.  This typically requires a "disruption or obstruction of a state proceeding" so severe that it prevents state courts from "conduct[ing] a reasoned method of inquiry into relevant questions of fact and law."  *Id.* at 70-71.

Dunbar has not satisfied this high burden.  The record reveals that Dunbar had multiple opportunities to litigate his Fourth Amendment claim in the New York courts.  Between his arrest and the filing of this petition, Dunbar received numerous opportunities to fully litigate his Fourth Amendment claim: (1) the pre-trial suppression hearing, (2) his first direct appeal to the Second Department, (3) his second direct appeal to the Second Department, (4) the post-conviction suppression hearing, (5) his third direct appeal to the Second Department, and (6) his appeal to the Court of Appeals.  Nowhere in his petition does he argue that these hearings were obstructed,

---

[4] These procedures are spelled out in Section 710 of the New York Criminal Procedure Law, which governs motions for the suppression of trial evidence.  *See Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992).

disrupted, or otherwise procedurally defective.  He simply argues that they reached the wrong result.  Am. Petition 6.  And "a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."  *Capellan*, 975 F.2d at 72.

The map that Dunbar appends to his amended petition does not change the outcome.  Dunbar does not argue that the government suppressed the map or otherwise prevented his counsel from relying on it at the suppression hearings, at trial, or on appeal.  Nor could he, given that he himself concedes that the government produced the map.  ECF No. 15, at 1.  Rather, he alleges that the map undercuts the testimony of one of the government's witnesses at the post-conviction suppression hearing. *Id.* at 1-2; Am. Pet. 6.

There are two problems with that argument.  *First*, as already noted, a disagreement with the state court's conclusion as to the reliability of the suppression hearing witnesses is not enough to show an "unconscionable breakdown" in its proceedings for adjudicating Fourth Amendment claims.  *Capellan*, 975 F.2d at 72.[5]  *Second*, the map was never admitted into

---

[5] In *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977), the Second Circuit cited to a law review article discussing situations that might rise to an "unconscionable breakdown" in the state's process.  *See Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d Cir. 1988). Those situations include "the bribing of a trial judge, the government's knowing use of perjured testimony, or the use of torture to extract a guilty plea, all without opportunity to obtain state review."  *Id.*  Here, Dunbar

evidence, even though it was produced to Dunbar's counsel.  *See* ECF No. 15, at 1.  So, even if the Court were to review the merits of the state court's Fourth Amendment analysis, it could not rely on the map in doing so, because review of factual or legal claims under Section 2254 is "limited to the record that was before the state court," except where the "factual predicate . . . could not have been previously discovered through the exercise of due diligence."  *Shoop v. Twyford*, 596 U.S. 811, 819 (2022).

### IV.  Conclusion

For the foregoing reasons, Dunbar's petition for a writ of habeas corpus is denied.  The Clerk of Court is respectfully directed to close this case.  The state is directed to serve a copy of this Order on Dunbar at his present place of confinement and file proof of service.


SO ORDERED.


  /s/ Eric Komitee  
ERIC KOMITEE  
United States District Judge

Dated:     February 20, 2026  
           Brooklyn, New York

---

does not allege any such circumstances.  While he argues that the map undermines testimony offered by the government's suppression hearing witness, he does not go so far as to allege that the government *knowingly* offered perjured testimony.